PLANNING BOARD OF READING *vs.* BOARD OF APPEALS OF READING & another.

Middlesex.    November 9, 1955. — March 6, 1956.

Present: QUA, C.J., RONAN, WILKINS, WILLIAMS, & WHITTEMORE, JJ.

*Zoning. Reading. Equity Pleading and Practice,* Parties, Zoning appeal. *Municipal Corporations,* Officers and agents.

Demolition of two small buildings together occupying slightly over two hundred square feet and lawfully used for the preëxisting nonconforming purposes of a store and a gasoline station on a parcel of land, otherwise vacant, zoned for residential use by the town's zoning by-law, and erection of one large building covering over twenty-four hundred square feet in their place for a continuance of substantially the same uses, would not be protected against application of the by-law by G. L. (Ter. Ed.) c. 40, § 26, as appearing in St. 1933, c. 269, § 1, and as amended, and would not fall within a provision of the by-law that "Any building, part of a building or premises" put to a nonconforming use at the time the by-law took effect "may be . . . altered or extended for that use" upon a permit by the board of appeals. [659–661]

The planning board of a town was authorized by G. L. (Ter. Ed.) c. 40, § 30, as appearing in St. 1933, c. 269, § 1, as amended, to appeal to the Superior Court from a decision of the zoning board of appeals. [662]

BILL IN EQUITY, filed in the Superior Court on April 22, 1954.

The suit was heard by *Morton,* J.

*Harry M. Lack,* for Cole, intervener, (*Samuel H. Davis,* Town Counsel, for the defendant board of appeals of Reading, with him).

*John N. Kelly,* for the plaintiffs, submitted a brief.

RONAN, J.  This is an appeal to the Superior Court in the form of a suit in equity brought under G. L. (Ter. Ed.) c. 40, § 30, as appearing in St. 1933, c. 269, § 1, as amended, against the board of appeals of the town of Reading seeking to annul a permit granted to one Eva Cole on March 30, 1954, purporting to authorize her to demolish all the buildings located upon a parcel of land owned and occupied by her for a nonconforming use and to erect a new building for the further maintenance of the same nonconforming use. Cole has been allowed to become a party defendant to the present proceedings and has appealed from a decree annulling the decision of the board of appeals.

The town of Reading on March 9, 1942, duly adopted a zoning by-law dividing the town into different districts or zones.  The parcel of land now in question has since been located in a Residence A 1 district, in which "the erection or use of any principal building except as a single family detached house is specifically prohibited."  The premises in question before and since the adoption of the by-law have been occupied by a wooden structure measuring approximately twelve by twelve feet which has been used as a variety store and by another structure about eight by eight feet used as a gasoline station.  There has also been located upon this lot an open automobile grease pit connected with one of the buildings.  The decision of the board of appeals purported to grant Cole a permit to demolish these structures and to erect in their place a new building seventy-six feet long and thirty-two wide, one end of this new structure for the distance of thirty-two feet to be used for a grocery store and the remainder of the building for the sale of gasoline, lubricants, automotive equipment, and accessories, but "no body or motor repair work."

The zoning statute, G. L. (Ter. Ed.) c. 40, § 26,[1] as appearing in St. 1933, c. 269, § 1, as amended, governing nonconforming uses provides that zoning by-laws shall not

---

[1] The appeal in this case was filed prior to the effective date of c. 40A, inserted by St. 1954, c. 368, § 2, and the references herein are to the statutes in force before this new chapter became operative.

apply to nonconforming uses existing at the time of the adoption of the by-law but that section provides that zoning by-laws "shall apply to any change of use thereof and to any alteration of a building or structure when the same would amount to reconstruction, extension or structural change, and to any alteration of a building or structure to provide for its use for a purpose or in a manner substantially different from the use to which it was put before alteration, or for its use for the same purpose to a substantially greater extent. Such an ordinance or by-law may regulate non-use of non-conforming buildings and structures so as not to unduly prolong the life of non-conforming uses."

The legislative history of § 26 up to the time this suit arose is short and decisive. This section as originally drafted and submitted to this court for an advisory opinion read as follows: "This act shall not apply to existing structures nor to the existing use of any building, but it shall apply to any alteration of a building to provide for its use for a purpose, or in a manner, substantially different from the use to which it was put before the alteration." There was no common law origin of this section or the other sections comprising the same chapter. The court gave an advisory opinion that the section was a recognition of the rights "already acquired by existing use or construction of buildings [which] in general ought not to be interfered with. See *Commonwealth* v. *Alger*, 7 Cush. 53, 103, 104." *Opinion of the Justices*, 234 Mass. 597, 606. When enacted into law the section appeared in a form similar to that which had been submitted to the court, St. 1920, c. 601, § 7. It became G. L. c. 40, § 29, and then G. L. (Ter. Ed.) c. 40, § 29, and remained so until it was amended by St. 1933, c. 269, § 1, and put in the form in which it appeared as already set forth.

The words of § 26 as they stood at the time of this suit were mandatory to the effect that the nonconforming premises should no longer be exempt from the zoning by-laws upon specified changes in the use of the land or build-

ings. It would seem that such a change would be wrought, by reason of carrying out the permit, if the lot which was vacant except for two buildings together occupying a few feet over two hundred square feet is to be the site of a new building covering over twenty-four hundred square feet. The permit contemplated not the alteration of any building but the demolishing of all existing buildings and the construction of a new one.

Cole, however, contends that the board of appeals was authorized to issue the permit under § 18 of the zoning by-law. This section reads as follows: Section 18, "1. Any building, part of a building or premises which at the time this by-law takes effect, is being put to a non-conforming use may be: . . . b. Altered or extended for that use only upon a permit by the Board of Appeal, or as ordered by the Building Inspector to make such building or premises safe."

A by-law cannot conflict with the statute. *Newton* v. *Belger*, 143 Mass. 598. *Commonwealth* v. *Hayden*, 211 Mass. 296. *Goldstein* v. *Conner*, 212 Mass. 57. *Cawley* v. *Northern Waste Co.* 239 Mass. 540. *Commonwealth* v. *Badger*, 243 Mass. 137. *Commonwealth* v. *Atlas*, 244 Mass. 78, 82. *North Reading* v. *Drinkwater*, 309 Mass. 200. *Commonwealth* v. *Wolbarst*, 319 Mass. 291. *122 Main Street Corp.* v. *Brockton*, 323 Mass. 646. *Commonwealth* v. *Rivkin*, 329 Mass. 586. *New England Telephone & Telegraph Co.* v. *Brockton*, 332 Mass. 662, 665. The same rule has been applied to zoning by-laws. It was remarked in *Wilbur* v. *Newton*, 302 Mass. 38, 43, that "The existence of a nonconforming use of the land when the ordinance was enacted did not, either under its original or its amended terms, legalize new buildings in connection with that use." It was pointed out in *Inspector of Buildings of Burlington* v. *Murphy*, 320 Mass. 207, 209, that § 26 prescribes the minimum of tolerance that must be accorded to nonconforming uses, and that the erection of a small building twenty-two by thirty-five feet in size, whether considered as an extension of a larger building or as a separate building, was

violative of a by-law which provided that "no building or premises devoted to a non-conforming use or uses, in whole or in part shall be structurally changed, enlarged or extended" unless done for the purpose of transferring the premises into a conforming use. It was stated in *Connors v. Burlington*, 325 Mass. 494, 496, that "This new building was not protected as a nonconforming use existing prior to the zoning by-law, but was at least a 'reconstruction, extension or structural change.'" The completion of this new building was stopped. It was intended when completed to be used in carrying out the nonconforming use to which the premises had been devoted.

Although the by-law refers to the alteration or extension of a nonconforming use, the landowner argues that the reconstruction that was permitted was an alteration or extension within the terms of the by-law. We do not agree. The term reconstruction does not appear in the by-law. No extension of the use was sought or granted. Indeed, the parties upon the record agreed that no such extension would result. In other words, no change in the land apart from the structures was requested or approved. The term alteration as used in the by-law can in the present circumstances therefore apply only to existing structures. But no alteration to any building or part of a building was involved. What the landowner sought was the erection of a new building in place of the old buildings to be devoted to the nonconforming use.

Cole relies upon *LaMontagne v. Kenney*, 288 Mass. 363, in support of the validity of the present by-law. The by-law in the cited case permitted another nonconforming use which was "not more detrimental to the character of the district." In the instant case, the permit not only goes beyond the by-law but purports to allow the demolition of all the existing buildings and the reconstruction of a new and much larger structure. The board of appeal had no authority to "legalize new buildings in connection with that [nonconforming] use." *Wilbur v. Newton*, 302 Mass. 38, 43. In any event, assuming, but not deciding, that the

by-law authorizes the board of appeals to permit what is requested here, there is no standard in this by-law to guide the board in the exercise of its discretion.

The entire membership of the planning board of the town became parties plaintiff to the amended appeal. The statute under which the appeal was brought, G. L. (Ter. Ed.) c. 40, § 30, as appearing in St. 1933, c. 269, § 1, authorizes "any municipal officer or board . . . [to] appeal to the superior court sitting in equity" from a decision of the board of appeals. It is to be noted that the statute did not require the officer or board to be aggrieved as it did in the case of every other party plaintiff in order to appeal. Some of the duties of the planning board are at least remotely related with matters fringing on zoning. See G. L. (Ter. Ed.) c. 41, as amended by St. 1947, c. 340, § 4; St. 1953, c. 674. The relation of a planning board to zoning was recognized by G. L. (Ter. Ed.) c. 40, § 27, as appearing in St. 1941, c. 320, providing that no zoning districts or restrictions therein shall be changed "until after the planning board . . . has held a public hearing thereon . . . and has submitted a final report with recommendations to the city council or town meeting, or until twenty days shall have elapsed after such hearing without the submission of such report." *Whittemore* v. *Town Clerk of Falmouth,* 299 Mass. 64. *Caires* v. *Building Commissioner of Hingham,* 323 Mass. 589. The general aim of a planning board is somewhat similar to but different from that of a zoning board of appeals in its own individual field. The planning board comes within the description of a municipal board as mentioned in § 30 and is authorized by that section to appeal from the decision of the board of appeals.

*Decree affirmed.*