ROBERT F. CHILSON & others vs. ZONING BOARD OF APPEAL OF ATTLEBORO.

Bristol.    February 8, 1962. — May 17, 1962.

Present: WILKINS, C.J., SPALDING, WHITTEMORE, CUTTER, & KIRK, JJ.

*Zoning,* Nonconforming use. *Laches. Estoppel. Equity Jurisdiction,* Zoning enforcement.

In a suit in equity by landowners in a city by way of appeal from a decision by the city's zoning board of appeals permitting replacement of a building in the plaintiffs' neighborhood used as an automobile service station with a new building for the same use under a provision of the zoning ordinance authorizing the board of appeals to grant a permit for replacement of a nonconforming building under certain conditions, the nonconforming status of the existing building must be taken as established as against the plaintiffs where it appeared that, although the existing building, previously used otherwise, had become a service station, and gasoline pumps had been moved to a place in front of it, after the adoption of the zoning ordinance, such changes had been approved by the building inspector by reason of an eminent domain taking, that the existing building had been used for some nine years as a service station, and that in the interval the property had been conveyed to new owners. [409–410]

A provision of a city's zoning ordinance authorizing the board of appeals to grant permission for "alteration, enlargement, reconstruction . . . replacement of, or addition to" a nonconforming building upon making certain findings as to hardship and absence of injury to the neighborhood or property values in the district would be valid in any instance where the use of the changed building or replacement building, not having the benefit of the exemption afforded by G. L. c. 40A, § 5, but having a special aspect for zoning classification purposes, would be valid according to general zoning considerations [410–413]; and on the facts it

———

was within the authority of the board of appeals under such provision of the ordinance to grant permission to replace an old and inadequate nonconforming building used as an automobile service station with a somewhat larger, modern service station building. [413–414]

BILL IN EQUITY filed in the Superior Court on October 20, 1959.

The suit was heard by *Taveira,* J., on a master's report.

*Ernest L. White, Jr. (George W. Harris & Bruce K. Carpenter* with him) for the plaintiffs.

*Franklin R. McKay,* City Solicitor, for the defendant.

WHITTEMORE, J. This is the appeal of the plaintiffs, aggrieved landowners in Attleboro, from a final decree in the Superior Court which adjudged valid and within its jurisdiction a decision of the city's zoning board of appeal. The decision had granted the application of Frank P. and Myrtle B. Rollins for permission to replace a nonconforming cement block building at 644 Pleasant Street, used as a service station, about thirty feet by twenty-five feet in floor area, with a modern masonry two bay gasoline service station approximately forty-six feet by twenty-seven and four-tenths feet in floor area. The facts are established by a master's report.

1. The appellants contend at the threshold that the use at 644 Pleasant Street, which under the decision is to be changed, is not a valid nonconforming use.

The zoning ordinance was adopted in 1942. At that time there stood on Pleasant Street, on about thirty acres of land in single ownership, two buildings: (1) (on a part of the tract which was later designated as lot 190B) a two story building used for a combination grocery store and gasoline service station with service pumps in its front yard; (2) (on a part of the tract which was later designated as lot 190A) the cement block building above described, located about six feet to the east and twenty feet back of the store building. This cement block building had been constructed to house school buses but because of an increase in the width of buses this use was given up and the buses were "kept on the premises outside the building," and from 1937 to 1946

the building was used in connection with an electric foaming or plating business. The tanks for gasoline were in the ground beside the store building and directly in front of the cement block building. A part of the premises, to the east of the cement block building and concealed from view by an eight foot solid wooden fence, was used to store junk and old automobiles. A plan (which with other exhibits was referred to in the report and transmitted therewith) shows that in 1946 the nonconforming premises of store and gasoline station, concrete block building and "auto junk yard" extended along Pleasant Street for about 190 feet.

On the relocation of Pleasant Street in 1946, its new northerly line "went through the area upon which the gas pumps were located" in front of the store building. As a result, there being inadequate space in front of that building "to accommodate the pumps and automobiles to be serviced, the pumps were moved in front of the cement block building." This was at some time between September, 1946, and October, 1950, and while the land was in single ownership. The underground tanks were not moved. The cement block building, No. 644, then "became the gasoline service station." "This change of location was approved by the Building Inspector because the eminent domain taking had rendered it impossible to maintain gasoline pumps in front of the grocery store building."

The two buildings remained in single ownership until 1950 when the parcel then designated as lot 190B with the building formerly used for combination store and gasoline station was sold. In 1952, Frank P. Rollins and Myrtle B. Rollins became the owners of lot 190A with the cement block building thereon.

The master found that "on the effective date of the zoning ordinance the premises and the building thereon numbered 644 Pleasant Street, Attleboro, were being lawfully used as a gasoline service station business and that said use has never been abandoned." This finding is belied, at least as to the building, by the specific finding of the use of the building for an electric foaming or plating business.

The master, we infer, concluded that the service station use was dominant in respect of the adjacent land and building so that the "premises" for purposes of the zoning ordinance included not only the tanks in the ground at 644 Pleasant Street, but also the cement block building behind the tanks. There is some support for this conclusion in the subsidiary findings. There are nevertheless difficulties in concluding that the owner was free to move nonconforming uses from building to building within the same premises.

The ordinance (§ 6 A) authorizes that "[a]ny lawful use being made of any building, structure or premises . . . may be continued in the same building, structure or premises . . . ." This may confine a nonconforming use to the particular building in which it was located on the adoption date, notwithstanding that the building is a part of more extended premises. Furthermore, there is in § 6 B an express limitation that "no non-conforming uses shall be . . . moved . . ." unless changed to (1) a conforming use or (2) the board of appeal grants permission "for the . . . moving . . . of . . . a non-conforming building or structure."

We do not reach the issue. At the time of the filing of the bill, October 20, 1959, the cement block building had been in use for the gasoline service station for at least nine years. The change had been approved by the inspector of buildings who by § 9 A is charged to "execute the provisions of this ordinance" and by § 9 B is directed "not [to] issue any permits for any use or change of use . . . which would be in violation of any of . . . [its] provisions . . . ." The move to the cement block building was colorably within the exemption applicable to nonconforming uses; the property had been conveyed to new owners; it would be unjust and unreasonable to upset the informal decision of the enforcing officer in respect thereof in this suit by owners of other property in the neighborhood. See *Stewart* v. *Finkelstone,* 206 Mass. 28, 36; *Raytheon Mfg. Co.* v. *Radio Corp. of America,* 286 Mass. 84, 100–101; *Norton* v. *Chioda,* 317 Mass. 446, 451–452; *Barney & Carey Co.* v. *Milton,* 324 Mass. 440, 444–445; *Marini* v. *Borough of Wanaque,* 37 N. J.

Super. 32, 41. Compare *Heagen* v. *Borough of Allendale,* 42 N. J. Super. 472, 485–487; *Diehl* v. *Dunn,* 13 Wis. 2d 280, 286–287. The rule that a municipality may not be estopped or barred by laches is inapplicable. Compare *Collins* v. *Boston,* 338 Mass. 704, 709; *Building Inspector of Wayland* v. *Ellen M. Gifford Sheltering Home Corp. ante,* 281, 286.

It is true that the owners ask more than that their use of No. 644 for a gasoline service station not be disturbed. We hold, however, that in the circumstances their application must be dealt with as a request to change and enlarge a valid nonconforming use.

2. We turn to the decision to permit a new building at 644 Pleasant Street.

The zoning ordinance (§ 6 B 2) provides in respect of nonconforming uses that the board of appeal upon a showing "to the satisfaction of the board that a literal compliance with the provisions of this paragraph (B) would result in an unnecessary hardship . . . [may in accordance with the provisions of § 7 grant permission] for the alteration, enlargement, reconstruction, moving, or replacement of, or addition to a non-conforming building or structure . . . provided however, that no non-conforming use . . . [may] be changed to a use which is prohibited or not authorized in any district in which the original non-conforming use is authorized." Section 7 requires notice and a public hearing and provides: "In any case no permission shall be granted . . . unless the board of appeal shall, after investigation . . . make a written finding . . . that the proposed use will not substantially reduce the value of any property within the district and will not otherwise be injurious, obnoxious or offensive to the neighborhood."

The board made the necessary findings under the ordinance. The master also concluded on adequate subsidiary findings that literal compliance with the nonconforming use provision would result in unnecessary hardship and that the new use will not be injurious, obnoxious, or offensive to the neighborhood and will not substantially reduce the value of any property in the district. Subsidiary findings are

that the service station is the second oldest in the city, located on a main thoroughfare; the business has suffered "over the past years because the present structure is old and cannot accommodate the required facilities to service larger automobiles." The new structure will have two bays and be of modern structure and design; the storage of old automobiles and buses would be eliminated and the business would be confined to the operation of a gas station; the new structure will eliminate an eyesore and "be a distinct betterment over the present structure and business." Values of surrounding properties would not be reduced; "the district would gain . . . ." Any additional contribution to the heavy automobile traffic on the street would be "trivial." It would be unprofitable to repair the present structure or to continue to do business from it; that structure "constitutes a threat to property values." The new structure would sustain or improve values.

The standards to be applied by the board in granting a permit are established by the ordinance only and are not imposed or expressly authorized by statute. Compare the statutory requirements for a variance. G. L. c. 40A, § 15.

The plaintiffs challenge the validity of the ordinance so far as it permits such an alteration of nonconforming premises.

The statutory provisions in respect of nonconforming uses (now G. L. c. 40A, § 5) do not purport to authorize changes therein. The statute prescribes the minimum tolerance which must be given to nonconforming uses. *Inspector of Bldgs. of Burlington* v. *Murphy,* 320 Mass. 207, 209, and cases cited.

We are not presented merely with an increase in the degree of use of nonconforming premises which would not destroy the statutory exemption. *Building Commr. of Medford* v. *McGrath,* 312 Mass. 461. *Marblehead* v. *Rosenthal,* 316 Mass. 124, 128. *Inspector of Bldgs. of Burlington* v. *Murphy,* 320 Mass. 207, 210. The erection of a new building or alteration of an existing building for substantially greater use is expressly put outside the exemption by the

statutory words: "but it shall apply . . . to any alteration
. . . when the same would amount to reconstruction, exten-
sion or structural change, and to any alteration . . . to pro-
vide . . . for its use for the same purpose to a substan-
tially greater extent." *Inspector of Bldgs. of Burlington*
v. *Murphy,* 320 Mass. 207, 210. *Connors* v. *Burlington,* 325
Mass. 494. See *Planning Bd. of Reading* v. *Board of Ap-
peals of Reading,* 333 Mass. 657, 659–661. Compare *Man-
chester* v. *Leahy,* 336 Mass. 158.

The issue is the extent to which the zoning ordinance may
make special provision for property because it has been a
nonconforming use.

The statute does not purport to prohibit such a special
provision. In its mandate, as set out above, the statute
says only that, if changes, as defined, occur, which destroy
the exemption, the validity of the use, no longer exempt,
must be determined under the provisions of the zoning ordi-
nance or by-law other than those which state the noncon-
forming exemption.

General zoning considerations apply in determining
whether a use of premises, which is no longer an exempted
use, is a use validly authorized by the zoning ordinance or
by-law. Notable is the requirement of uniformity of classi-
fication. But the special aspect which the prior noncon-
forming use has given to the locus is a relevant circum-
stance. The denial of a change in use does not necessarily
entail immediate abandonment of the nonconforming use
and hence the establishment in the locus of conformity to
the prevailing residential zone. The alternative in many
cases would be that the owner would hold on to rundown
structures and premises in the hope of salvaging the busi-
ness value. Hence a nonconforming locus has a special
aspect for classification. This is recognized in those ordi-
nances and by-laws which have permitted the substitution
of a business found not to be more detrimental in its effect
on the neighborhood. *LaMontagne* v. *Kenney,* 288 Mass.
363. *Donovan Drug Co.* v. *Board of Appeals of Hingham,*
336 Mass. 1. *Seekonk* v. *Anthony,* 339 Mass. 49, 55. With-

out such a provision in the local zoning law a change to a different use which is no more objectionable is barred by the statute. *Adamsky* v. *Mendes,* 326 Mass. 603, 605. *Everpure Ice Mfg. Co. Inc.* v. *Board of Appeals of Lawrence,* 324 Mass. 433, 435–436. Under such a provision, however, the change may be made. *LaMontagne* case, *supra.* See *Everpure Ice Mfg. Co. Inc.* case, *supra.* In *Smith* v. *City Council of Marlborough,* 302 Mass. 571, 573, an ordinance was applied which exempted from residence districts "all lands which at the time this ordinance becomes effective are used for any business or industry." The opinion did not discuss whether existing nonconformity could be a valid basis for classifying every nonconforming use as outside the surrounding residential district, and we do not so intimate. But the decision does suggest the special aspect for classification purposes of nonconforming sites.

The effect of these provisions allowing changes from nonconforming uses to uses which are not more detrimental is to establish a classification of sites with the specification that each site within the class, upon losing its nonconforming exemption from zoning regulation, falls into the special class subject to a determination that the criteria of the class are met. These criteria, established by the zoning ordinance or by-law, must bear reasonable relation to the basis of classification. The ordinance or by-law may not grant to a board of appeal without standards the power to determine that a new or greatly extended use shall be permitted; that, in effect, would be an unlimited delegation of the zoning power. *Planning Bd. of Reading* v. *Board of Appeals of Reading,* 333 Mass. 657, 662.

An exact line may not be drawn. The facts found in respect of the application of the standards of the ordinance justify the conclusion that, in substance, the modernization of the existing nonconforming use and the confinement of the use within a building were the dominant aspects of the change rather than enlargement of the use. We rule that the permitted change does not transcend the limits of reasonable substitution of facilities as a means of permitting

the community to adjust to the presence within a residential zone for an indefinite time of a nonconforming parcel. We do not intend to suggest that every change within the expressed standards of § 6 B 2 would be valid. Findings of unnecessary hardship and no hurt to the district or to property values would not establish validity if the limit of reasonable relation to the prior nonconforming use in its residential environs should be transcended.

*Decree affirmed.*