SIMEONE STONE CORPORATION *vs.* BOARD OF APPEALS OF
BOURNE & another.

Barnstable.    November 7, 1962. — December 4, 1962.

Present: WILKINS, C.J., SPALDING, WHITTEMORE, CUTTER, KIRK,
& SPIEGEL, JJ.

*Zoning,* Variance, Nonconforming use or structure.   *Equity Jurisdiction,*
Permit, Appeal from decision of board of appeals.   *Permit.*

Notwithstanding that, in a suit in equity by way of appeal to the Superior
Court under G. L. c. 40A, § 21, from a refusal of a town's zoning
board of appeals to grant a variance sought by the plaintiff authorizing
the erection of certain structures, the building inspector was joined as a
defendant, the plaintiff prayed for an order directing issuance of a
building permit for such structures denied by the building inspector,
and it was stipulated that all "required procedural steps" had been
taken to bring the denial of the permit before the court, such denial was
not properly before the court where it appeared that there had been no
appeal to the board from the denial nor consideration by the board of
the matter of the permit.   [188–189, 192]

Erection of new structures as part of an industrial plant having a preexist-
ing nonconforming zoning status was not permissible under either § 5
of the zoning enabling act, G. L. c. 40A, or provisions of the zoning
by-law allowing continuance of a nonconforming use of structures and
premises but prohibiting an increase "in size [of a nonconforming struc-
ture] or major alteration . . . on its exterior to alter its existing general
character," without mention of new structures.   [190, 192–193]

The record on an appeal to the Superior Court under G. L. c. 40A, § 21,
disclosed no ground for disturbing a decision by a zoning board of ap-
peals denying an application by the proprietor of a preexisting non-
conforming "ready-mix" concrete plant for a variance authorizing the
erection at the plant of a structure to be used as a scale house and office
and the installation therein of a large scale.   [193]

BILL IN EQUITY filed in the Superior Court on August 10,
1960.

The suit was heard by *Paquet, J.*

*Paull M. Cushman* for the defendants.

*Joseph R. Cleary* for the plaintiff.

CUTTER, J.   The plaintiff (Simeone) in June, 1960, sought
a variance under the Bourne zoning by-law, and also a build-

ing permit to build an office, scale, and scale house in connection with a business constituting a nonconforming use of premises owned by it in Bourne.   The variance was denied by the board of appeals and the building permit was denied by the building inspector.   Thereafter a bill in equity was filed in the Superior Court under G. L. c. 40A, § 21 (as amended through St. 1960, c. 365), purporting to appeal from the denial of the variance, but also alleging (by amendment) that the application for a building permit was denied on the ground that a zoning variance was necessary and praying that the court "order a permit to issue."   The building inspector was added as a defendant by amendment. No appeal to the board of appeals under G. L. c. 40A, § 13 (as amended through St. 1955, c. 325, § 1, see fn. 1, *infra*) appears to have been taken from the denial of the building permit, which it is agreed was because of the necessity of a variance.   It also was agreed, however, on June 28, 1961, by a somewhat anomalous stipulation that "all necessary and legally required procedural steps have been complied with by . . . [Simeone] and the . . . [board of appeals] to bring properly before the Superior Court all of the issues . . . particularly in reference to the denial of the . . . request for . . . a building permit . . . and also in reference to the denial of the . . . application for a variance."

The trial judge heard the case on oral testimony and a statement of certain agreed facts.   He made findings and rulings.   A final decree was entered that the scale was "not an attempt to . . . extend the nonconforming use"; that the "use is not in violation of the zoning by-law"; that nothing in the by-law "prevents . . . issuing a building permit"; and that "the decision of the [b]oard . . . denying . . . a building permit was in excess of its authority and . . . is . . . annulled."   He ordered a permit to issue.

Certain of the facts already stated and the following facts were agreed.   Simeone purchased the premises in February, 1960, from Tri-City Concrete Co., Inc. (Tri-City), to which, on July 19, 1958, there had been issued a permit to construct a structure for batching materials for ready-mix

concrete. Under the zoning by-law in force in 1958, the premises were in a general use district, in which the plant was a permitted use. The plant was completed in the spring of 1959, at a cost of $90,000. On May 7, 1959, a revised zoning by-law became effective. The premises were thereby changed from a "general use" area to a "residence 20" district. It is agreed (and we assume without deciding) that "[t]his change . . . did not affect the legal right of Tri-City to complete its plant under the" 1958 permit and to operate the plant thereafter. See G. L. c. 40A, § 11, inserted by St. 1954, c. 368, § 2.

Since 1959, "the premises . . . [had] been used as a concrete batching and mixing plant by Care-Mix, Inc." (a subsidiary of Tri-City) until March, 1961, when the plant was taken over by Simeone.

The zoning by-law (§ V, 2) provides, as to nonconforming uses, among other things, "(a) Any building, structure, part thereof or premises which at the time of the adoption of this [b]y-[l]aw is being put to a nonconforming use, may continue to be used for the same purpose. (b) No nonconforming building or structure shall be increased in size or major alteration made on its exterior to alter its existing general character."[1]

---

[1] Relevant provisions of the zoning enabling act are G. L. c. 40A, §§ 5 and 12 (inserted by St. 1954, c. 368, § 2), and § 13 (as amended through St. 1955, c. 325, § 1). These provisions (as thus amended) read in part: § 5. "Except as provided in section eleven [relating to the effect of new or amended by-laws on existing permits], a zoning . . . by-law or any amendment thereof shall not apply to existing buildings or structures, nor to the existing use of any building or structure, or of land to the extent to which it is used at the time of adoption of the . . . by-law, but it shall apply to any change of use thereof and to any alteration of a building or structure when the same would amount to reconstruction, extension or structural change, and to any alteration of a building or structure to provide for its use for a purpose or in a manner substantially different from the use to which it was put before . alteration, or for its use for the same purpose to a substantially greater extent. . . ." § 12. "The inspector of buildings in a . . . town . . . shall withhold a permit for the construction or alteration of any building or structure if the building or structure as constructed or altered would be in violation of any zoning . . . by-law or amendment thereof . . . ." § 13. "An appeal to the board of appeals . . . may be taken by any person aggrieved by reason of his inability to obtain a permit from any administrative official under the provisions of this chapter . . . or by any person aggrieved by any order or decision of the inspector of buildings or other administrative official in violation of any provision of this chapter, or any . . . by-law adopted thereunder. . . ."

The trial judge made findings as follows. "In June, 1960, . . . [Simeone] decided to operate the plant independently of Care-[M]ix, Inc., and made application to the [building] [i]nspector to construct an office building and scale house and to install a 50-ton capacity scale . . . adjacent to the then existing batching machine." The building would be "24 feet long, 24 feet wide, and 15 feet high to house the dial scale." The additional space was to be used "as an office." The original permit "to Tri-City provided for . . . a small office building 10 feet by 12 feet." The evidence showed that the scale would be about "10 feet wide and 42 feet long" over a pit five feet deep containing six concrete piers. Cf. *Williams* v. *Inspector of Bldgs. of Belmont,* 341 Mass. 188, 190–191. Cf. also *Manchester* v. *Leahy,* 336 Mass. 158, 160–161.

The judge found that a ready-mix concrete plant ordinarily not only sells its finished product, mixed wet or dry in a batching machine, but also sells the various ingredients separately. A scale is needed to weigh the ingredients sold separately, as well as the raw materials brought to the plant and those used in the machine. "There is no scale at . . . [Simeone's] plant with the exception of the scale that is part of the batching machine where the ingredients are weighed in the process of manufacturing the ready-mix concrete. In order . . . to sell the ingredients separately at the present time, it is necessary that the ingredients be deposited in the batching machine separately, weighed, and then dumped into trucks . . . . This is . . . awkward, time consuming, and expensive."

The judge concluded that such a "scale is an integral part of . . . a ready-mix concrete business," although there was evidence of plants operated without such scales and of the use of "public weighers." He also concluded that Simeone needed the new scale and that the proposed use would not "change the original character of the plant" or be "substantially greater in extent nor more detrimental to the character of the district than that which existed at the time the present zoning law was adopted. . . . There is no

attempt to increase the size of the plant . . . or to alter its general character or appearance."[2]

1. The case, so far as it relates to the denial of a building permit, is not properly before us and was not properly before the Superior Court. The actual decision of the board of appeals was merely "to deny . . . [the] variance." Despite the stipulation that the appeal was to be treated as one from the board's affirmance of the denial of a building permit, there is no showing that such a permit was ever considered by the board. Such consideration appears to be contemplated before any appeal under G. L. c. 40A, § 21. An appeal to the board from the building inspector's denial of the permit should have been taken before the present proceedings were initiated.

The case, however, has been dealt with as an appeal from the denial of a building permit. Because it may avoid further court proceedings and expense in a matter of community interest, we express our views upon the issue that has been argued. See *Wellesley College* v. *Attorney Gen.* 313 Mass. 722, 731.

2. By virtue of § IV, A, of the by-law, relating to residence districts, no special exceptions from its provisions may be granted under § X, 2 (c), except for guest houses. Thus the board of appeals had no discretionary power to grant a special permit or exception. Compare the situations considered in *Chilson* v. *Zoning Bd. of Appeal of Attleboro,* 344 Mass. 406, 410–414, and *Mahoney* v. *Board of Appeals of Winchester,* 344 Mass. 598, 600–602. Compare also *Vasilakis* v. *Haverhill,* 339 Mass. 97, 100. Under § V, 2 (b) of the by-law, no nonconforming building or structure shall be increased in size or major alteration made to alter its existing character. Here two entirely new nonconforming structures are proposed. The by-law does not in terms refer to such new structures and thus does not pur-

---

[2] The plant is "in a sharp depression on the premises . . . and is about 800 feet from the County Road and the nearest other building." It cannot be seen from the road "because of its location in a deep hole and . . . [because] it is surrounded by a large number of high trees." Only one private road from County Road leads into the plant.

port to exempt them from the general zoning requirements of the by-law or the statute. See G. L. c. 40A, § 5 (fn. 1, *supra*); *Wilbur* v. *Newton,* 302 Mass. 38, 43; *Connors* v. *Burlington,* 325 Mass. 494, 496. See also *Planning Bd. of Reading* v. *Board of Appeals of Reading,* 333 Mass. 657, 660–662, and the *Chilson* case, at pp. 412–414.

No adequate basis for annulling the board's denial of a variance (see G. L. c. 40A, § 15, cl. 3, as amended through St. 1958, c. 381) appears in this record. See *Barnhart* v. *Board of Appeals of Scituate,* 343 Mass. 455, 456–458. Because no provision of either the zoning enabling act or the by-law permits a new nonconforming structure, except after a variance is obtained, no building permit could be granted for the new scale and the enlarged building. Cases dealing with increased use of existing structures (see, e.g., *Building Commr. of Medford* v. *McGrath,* 312 Mass. 461; cf. *Marblehead* v. *Rosenthal,* 316 Mass. 124, 128) are not relevant. The proposed buildings are simply not allowed under the by-law. See *Inspector of Bldgs. of Burlington* v. *Murphy,* 320 Mass. 207, 209–210. Accordingly, it is not necessary to consider, as did the trial judge, whether use of the prohibited new structures would be "a different use or one substantially greater in extent . . . [or] more detrimental to the character of the district than that which existed at the time the . . . [revised] zoning [by-]law was adopted."

Our view is supported by *Seekonk* v. *Anthony,* 339 Mass. 49, 55. The by-law considered in that case (see p. 50, fn. 2), however, may have afforded a slightly greater flexibility in permitting alterations of existing structures than does the Bourne by-law.

3. The final decree is reversed. The case is remanded to the Superior Court for the entry of a new final decree (a) dismissing the appeal so far as it relates to the denial of a permit, and (b) stating that the decision of the board denying a variance did not exceed its authority, that no modification of its decision is required, and that the clerk of the court within thirty days after the entry of the decree send an attested copy thereof to the board.

*So ordered.*