Gershengorn, Wendie I., J.

Introduction

This is an appeal from a decision of the Zoning Board of Appeals for the Town of Dracut (Board) upholding a cease and desist order issued by the Town Building Inspector that required the plaintiff to stop using his property for a school bus transportation business. The central dispute between the parties is whether the plaintiffs’ use of the property is within the scope of a variance that the Town issued to a previous owner in 1974. For the reasons set forth below, the Board’s decision is AFFIRMED.

Findings of Fact

After trial, based on all credible evidence, this court finds the following facts. The property at issue is located in a residential district in Dracut at 210 Donohue Road (Property). In 1974, the Board granted a variance to Goudreau Construction Corporation, the entity that owned the Property at that time. The principal of Goudreau Construction Corporation was Richard Goudreau.
The variance decision is divided into three sections. The first is a statement of facts, which outlines the issue before the Board and the relief requested. It states that Goudreau requested a variance: “(1) for storage by owner of vehicles and equipment on premises, and (2) Maintenance of present garage for continued storage of vehicles and equipment by owner.”
The second section summarizes representations Goudreau and opponents to the variance made to the Board. Through his attorney, Philip Nyman, Goudreau explained to the Board his reasons for seeking the variance. Nyman explained that Goudreau was “in the blasting business, and the equipment to be stored would include a jeep, pick-up truck, compressor, [and] larger trucks used in his business.”
The third section of the variance decision entitled “DECISION” stated that “it was unanimously voted that relief could be granted in this case.” The variance was granted subject to eight conditions, including the requirements that Goudreau erect a chain link fence; plant shrubbery; and allow the ingress and egress of vehicles only between 10:00 p.m. and 6:00 a.m.
The variance decision does not specifically limit the number or type of vehicles that can be stored on the Property as a condition of the variance. The decision also does not elaborate on the scale of Goudreau’s blasting business. However, testimony from the Town . Building Inspector, Daniel McLaughlin, as well as former Dracut Selectman, Douglas Willett, established that it was a one-man blasting operation. The parties agree that the 1974 variance runs with the land and that successors in interest are entitled to the benefits of the variance.
Michael Kazanjian was the owner of the Property subsequent to Goudreau. From 1987 to 2004, Kazanjian kept vehicles and equipment associated with his excavation business at the Property. Kazanjian acquired title to the Property in 1997. The court credits Kazanjian’s testimony that he kept approximately sixteen vehicles on the Property consisting of ten-wheeler dump trucks, a low bed, bulldozers, excavators, a backhoe, and pick-up trucks. Kazanjian had up to twenty-two employees at one time, who kept their personal vehicles at the Property during the workday. In addition to his excavation business, Kazanjian had a snow plowing and sanding business during the winter. Kazanjian was visited by town building inspectors on a number of occasions while he owned the Property and never received a cease and desist order informing him that his use did not conform to the terms of the 1974 variance.
On July 30, 2004, Covalucci purchased the Property for $449,900.00, believing that it would be suitable for use in his business.[3] Covalucci is in the business of transporting special needs children to schools. He has contracts with the Town of Dracut and City of Lowell. In connection with his business, Covalucci employs approximately thirty employees and has sixty vehicles, thirty minivans and thirty small school buses (collectively, “buses”).
Covalucci’s employees arrive at the Property in their personal vehicles at approximately 6:15 a.m. They leave their personal vehicles behind, and depart in the small buses that they use to transport the children. The employees return the buses to the Property after the morning drop-off and then depart from the Property again in the afternoon to take the children home from school. Some employees elect not to return to the Property after the morning drop-off and, instead, retain the vehicles until the afternoon drop-off is complete. None of the children who are transported by Covalucci’s business board or exit the buses at the Property. The buses are returned for the final time at *586 approximately 4:30 p.m. and remain at the Property overnight. The mini-vans are usually kept overnight at the employees’ residences. No activity occurs at the Property on the weekends, and activity is reduced significantly in the summer months.
Before purchasing the Property in 2004, Covalucci made it clear to his attorney, Michael Geaiy, that he had needed a specialized properly to accommodate the needs of his business. Pursuant to his contract with the Ciiy of Lowell, Covalucci is required to store his transportation vehicles within ten miles of Lowell Ciiy Hall. The property at 210 Donohue Road satisfied this mileage requirement. While conducting a review of the records pertaining to the Property, Geary discovered the 1974 variance.
Geary contacted McLaughlin before the purchase and inquired about Covalucci’s proposed use of the Property in light of the variance. Geary informed McLaughlin that Covalucci intended to store thirty minivans and thirty small buses on the Property. McLaughlin responded to Geary by letter dated June 3, 2004. The letter does not specifically address the question of whether Covalucci’s proposed use of the Property is within the scope of the variance. However, it does indicate that the new owner would “benefit” from the variance because it “goes with the land.” The letter further indicates that the hours of ingress and egress set forth in the variance could not be varied because the Board no longer had the authority under Dracut by-laws to issue use variances, and because the use was not a prior non-conforming use, which would allow application for a special permit. Covalucci purchased the Property based on his belief that his use of the Property relative to his transportation business was valid under the terms of the variance.[4]
On August 13, 2004, McLaughlin followed up on a complaint that he had received from former Selectman Douglas Willett regarding Covalucci’s operation of a school bus terminal at the Property.[5] McLaughlin visited the Property and observed a number of school buses and automobiles belonging to Covalucci’s employees. McLaughlin then examined the records for the Property[6] and spoke with individuals who were familiar with prior owners’ uses of the Property. Following his investigation, McLaughlin issued a cease and desist order on August 31, 2004, informing Covalucci that his use of the Property was “substantially different from the use for which a variance was granted in 1974.”
Covalucci filed a timely appeal of the cease and desist order, and the Board conducted a duly noticed public hearing. Ultimately, the Board voted to uphold the order on the ground that the “(v]ariance goes with the property and the intent at the time was for a limited number of vehicles. A Bus Terminal surely is not within the scope of the original Variance and therefore should not be permitted.” In the findings section of the decision, Board members explained their reasoning. Chairman John Crowley considered Kazajian’s operation, and stated that Kazajian probably had a maximum of six to ten vehicles coming and going from the Property. Member Daniel McLaughlin noted that Kazajian’s operation was more in line with the variance than Covalucci’s since the intent of the variance was to allow for six to ten vehicles coming and going — not thirty to forty. In determining the scope of the variance, Chairman Crowley also looked to the 1984 special permit, which allowed Goudreau to repair up to three vehicles on the Property.[7] It is this decision which Covalucci now challenges, pursuant to G.L.c. 40A, §17 (2004 ed).

Ridings of Law

I. Standard of Review

The standard of review applicable to appeals of zoning board decisions is set forth in G.L.c. 40A, §17 (2004 ed.), which provides: “The court shall hear all evidence pertinent to the authority of the board . . . and determine the facts, and, upon the facts as so determined, annul such decision if found to exceed the authority of such board . . .” Although an appeal of a zoning board decision is based on de novo fact finding, the review is “circumscribed . . . [and the decision] cannot be disturbed unless it is based on a legally untenable ground, or is unreasonable, whimsical, capricious or arbitrary.” Davis v. Zoning Bd. of Chatham, 52 Mass.App.Ct. 349, 355 (2001) (quoting Roberts v. S.W Bell Mobile Sys., Inc., 429 Mass. 478, 486 (1999)). However, “[s]o long as ‘any reason on which the board can fairly be said to have relied has a basis in the trial judge’s findings and is within the standards of the zoning by-law and The Zoning Enabling Act, the board’s action must be sustained regardless of other reasons which the board may have advanced.” Briton v. Zoning Bd. of Appeals of Gloucester, 59 Mass.App.Ct. 68, 76 (2003) (quoting Davis, 52 Mass.App.Ct. at 356).

II. Variances and Non-Conforming Uses

The analysis differs for determining whether a use of land complies with a variance versus a special permit granted for a non-conforming use. Courts are permitted to consider whether a new owner’s use of property imposes a higher burden than the previous owner’s use to determine whether a prior non-conforming use has been unlawfully expanded. Mendoza v. Licensing Bd. of Fall River, 444 Mass. 188, 206-08 (2005). While the determination of whether a new owner’s use is beyond the scope of a variance is a seemingly analogous issue, the analysis for a variance is less generous and must focus on the terms of the variance as well as the recorded variance decision. Id. at 207 (explaining that because prior non-conforming uses were once legal uses of property, whereas use variances were never legal uses, the analysis for whether a new use conforms to a variance is stricter than the analysis for a non-conforming use). This distinction is consistent with “the different approaches to the grant of a variance and a special *587 permit, the former grudging and restricted, the latter anticipated and flexible.” Mendes v. Bd. of Appeals of Barnstable, 28 Mass.App.Ct. 527, 531-32 (1990). Thus, to the extent that the Board based its decision on a comparison of the quantity of vehicles used by Covalucci and the quantity of vehicles used by Goudreau and Kazanjian, the Board’s ruling was flawed because the variance itself did not limit the number of vehicles that can be stored. However, this flaw is not fatal to the Board’s decision as it is supported by facts which establish that Covalucci’s use of Property was for the operation of a bus terminal, rather than for the storage of vehicles.

III. Interpretation of the Variance

As noted above, the scope of the variance is derived from an interpretation of the variance and the recorded variance decision. Mendoza, 444 Mass, at 205. If the variance sets forth limitations on a particular use, the limitations are to be strictly construed. Id. at 208. If the variance is ambiguous, then the ambiguity is to be resolved against the holder of the variance. Id. at 206 (citing DiGiovanni v. Bd. of Appeals of Rockport, 19 Mass.App.Ct. 339, 347 (1985)).
Looking only at the face of the variance decision, a variance was granted “for storage by owner of vehicles and equipment on premises.” This variance was granted to Goudreau Construction Corporation, which the Board knew was a blasting company that intended to store “a jeep, pick-up truck, compressor, [and] larger trucks used in his business.” While the Board did not set limits to the number of vehicles that could be stored, it did specifically incorporate into its decision Goudreau’s representations as to the type of business he was operating as well as the vehicles he intended to store. See Mendoza, 444 Mass. at 205-06 (explaining that while purchasers of property need not look into hearing records for representations made by the property owner about her intended use, they are bound by representations that are incorporated into the variance decision). Because the decision includes background on the type of business for which the variance was granted, Covalucci was put on sufficient notice that the variance might not cover his use of the Property.
The Board’s conclusion that Covalucci’s use is beyond the scope of the variance is supported by facts which established that Colvalucci was using the Property as a bus terminal, rather than to store vehicles. Although no passengers board or exit the buses at the Property, the buses are deployed at the same time each morning and returned at the same time each afternoon. In addition, many of the buses depart and return to the Property twice a day. Given that the buses come and go on a frequent and predictable basis, the Board’s characterization of Covalucci’s use of the Property as a bus terminal, rather than the storage of vehicles, is reasonable. As the plaintiffs point out, the variance does allow for the ingress and egress of vehicles, as indicated by its condition that vehicles not come or go from 10 p.m. to 6 a.m. However, even though the Board allowed the coming and going of some vehicles, the primary purpose of the variance was to allow Goudreau to store vehicles. That is what the variance specifically approved. Because the storage of vehicles goes hand-in-hand with the movement of vehicles, the Board imposed a time requirement for when the vehicles were permitted to enter and exit as a condition of the variance. Covalucci’s use does not conform to the variance because his business centers around the coming and going of buses. Covalucci is not storing vehicles and incident to that, allowing vehicles to come and go. Rather, Covalucci is operating a transportation business where vehicles come and go at least twice per day during the school-week. Any ambiguity on whether the variance allowed the coming and going of sixty vehicles must be resolved against the holder of the variance. See Mendoza, 444 Mass. at 206. Given the language of the variance, the Board’s conclusion that the 1974 Board did not intend to allow the coming and going of sixty vehicles was not “based on a legally untenable ground, or ... unreasonable, whimsical, capricious or arbitrary.” See Davis, 52 Mass.App.Ct. at 355. Therefore, the Board’s decision to uphold the cease and desist order on the ground that Covalucci’s use is not within the scope of the variance should be upheld.

IV. Estoppel

Covalucci relies on Chilson v. Zoning Bd. of Appeal of Attleboro, 344 Mass. 406 (1962), for the proposition that a municipality is barred by laches or estopped from enforcing a zoning decision where a landowner has reasonably relied on a building inspector’s earlier interpretation of a zoning ordinance. It is debatable whether the building inspector’s letter even granted its “approval” of Covalucci’s use of the Property such that Covalucci can now argue that he reasonably relied on it in purchasing the Property.[8] See Cape Resort Hotels, Inc. v. Alcoholic Licensing Bd. of Falmouth, 385 Mass. 205, 224-25 (1982) (considering whether an official charged with administering the zoning by-laws ever specifically approved of the change in nonconforming use when determining if laches and estoppel applied). Even assuming the letter did grant approval, Covalucci is not entitled to the relief awarded in Chilson. Equitable relief under Chilson is available only in circumstances where the action taken by the building inspector is “colorably” legal and where “it would be unjust and unreasonable” not to enforce the decision because of a particular hardship faced by the properiy-owner. 344 Mass. at 409; see Cape Resort Hotels, 385 Mass. at 224-25; see also Fodor v. Zoning Bd. of Appeals of Somerville, No. 02-P-1262, 2004 WL 1837107 *1 n.5 (Mass.App.Ct. Aug. 17, 2004) (“The governmental zoning power may not be forfeited by the [erroneous] action of local officers in disregard of the [proper interpretation and application of] the statute *588 and the ordinance . . . The plaintiff landowner is presumed to have known of the invalidity . . . and to have acted at his peril.’ ” (quoting Ferrante v. Bd. of Appeals of Northampton, 345 Mass. 158, 163 (1962)).
In Chilson, the Court upheld a decision of the building inspector to permit a change in location of a non-conforming structure within the property. 344 Mass. at 409-10. The Court noted that “it would be unjust and unreasonable to upset the [building inspector’s] informal decision” because the property owners were forced to relocate their gas pumps after part of their land was taken though eminent domain. Id. at 408-09. Also central to the Court’s decision was the fact that the local ordinance authorized the board to permit the change in location of non-conforming structures. Id. at 409. Thus, because the ordinance stated that any lawful non-conforming use being made in any structure could be continued in the same building, structure, or premises, the Court found the building inspector’s decision to allowing the change in location to be “colorably legal.” Id.
Here, the Town’s amended by-laws prohibit the Board from issuing use variances, and a special permit is not available because the origin of the use was not a prior non-conforming use. Mendes v. Bd. of Appeals of Barnstable, 28 Mass.App.Ct. 527, 530-31 (1990). Thus, any informal decision of the building inspector allowing Covalucci to use the Properly in a manner beyond the scope of the variance was not “colorably legal.” Moreover, it was not colorable that Covalucci’s use of the Property to operate a bus transportation business was permitted under the terms of the 1974 variance, which allowed only for storage of vehicles. This case does not present facts sufficient to compel the extension of Chilson. Unlike in Chilson, Covalucci’s land has not been taken for public use, nor are there other inequities warranting this court to enforce the building inspector’s letter. See 344 Mass. at 408-09. Therefore, the relief awarded to the landowners in Chilson is not available to Covalucci.

ORDER

For the foregoing reasons, the decision of the Board is AFFIRMIED.

The Court refers to the plaintiffs collectively as “Covalucci,’’ although it was Covalucci’s business, 210 Donohue Road, LLC, that took title to the Property.

Covalucci’s decision to purchase the Property was also based on representations by his real estate broker, Dick Lepine, concerning the suitability of the Property for his transportation business.

Willett conveyed to McLaughlin a complaint that he had received from a neighbor of Covalucci who was unhappy with Covalucci’s bus terminal. In an effort to illustrate Willett’s bias, Covalucci’s counsel elicited testimony that Willett was very friendly with another resident of Dracut who was also in the bus transportation business. However, that testimony is not sufficient for this Court to conclude that the action taken by McLaughlin or the Board relative to Covalucci’s use of the Property was done in bad faith or for an improper purpose.

In addition to the 1974 variance, the records revealed a 1974 petition to house automobiles, which was denied; a 1984 special permit to repair motor vehicles which was granted with conditions concerning the number of vehicles to be repaired; a 1987 order to remove vehicles not covered by the special permit; and a 1991 cease and desist order concerning operation of an auto body shop.

The plaintiffs argue that the Board was confusing the issues by looking at the special permit. While the question before the Board was whether Covalucci’s use complied with the variance and not the special permit, the Board did not look only at the special permit. The Board’s consideration of the special permit was tangential to its analysis of the variance, thus no prejudicial error occurred.

The building inspector’s letter did not say that Covalucci’s use of the land for a school bus transportation business was permissible under the variance. It only said that “[t]he 1974 variance goes with the land, and so the new owner would benefit by it,” meaning that whatever the variance means, it applies to Covalucci.