## MARK SPEAR *vs.* BOARD OF APPEALS OF DANVERS.

No. 09-P-400.

Suffolk. November 5, 2009. - July 8, 2010.

Present: RAPOZA, C.J., SMITH, & LENK, JJ.

*Zoning,* Variance, Conditions, Lot size.

A Land Court judge erred in granting summary judgment affirming the decision of a town's board of appeals (board) requiring the landowner to cease from commercial activity on a lot that had an earlier-obtained use variance, where the owner had not violated any condition of the use variance, and the board sought to impose a lot size condition that was not stated in the use variance. [222-224]

CIVIL ACTION commenced in the Land Court Department on June 29, 2007.

The case was heard by *Karyn F. Scheier,* J., on motions for summary judgment.

*John A. Christopher* for the plaintiff.

*Bryan R. LeBlanc* for the defendant.

RAPOZA, C.J. Today we decide whether a variance granted in 1975 authorizing the use of a barn and adjacent land in Danvers for commercial storage remains in effect in light of subsequent divisions of the property.

*Background.* The material facts of this case are not in dispute. Mark Spear currently owns property located at 55 Wenham Street in Danvers. The property is located in a Residence III zoning district and contains both a residence and a barn. The property has been in Spear's family for several generations and had been used as a farm. In 1975, Spear's grandfather sought and obtained a use variance to utilize the barn and adjacent land for commercial storage.[1] The 1975 variance was granted for the

---

[1] Use variances are no longer permitted in residential zoning districts in Danvers.

"land and buildings located at 55 Wenham Street," with four conditions:

> "1. That the applicant keep the area in a neat and orderly condition and that the barn purposes be limited to storage only and that no work other than loading and unloading of materials and equipment take place at the premises.

> "2. That the premises not be used as a base for a business operation.

> "3. That outside storage is limited to 2½ times the floor area of the cement block building provided that all storage is behind the building and not visible from Wenham Street.

> "4. There shall be no work or loading carried on except between the hours of 7:00 a.m. and 5:00 p.m. Monday through Friday and no signs shall be permitted."

There were no other explicit conditions imposed. Since 1975, the barn has been rented out as a commercial storage space.

In 1975, the property contained a total of 3.9 acres. In 1987, the then-owners (Spear's parents) proposed to divide the property into two lots and needed a frontage variance for the lot containing the barn, which they received from the board of appeals (board) with the condition that all commercial activity cease upon execution of the deed separating the property into two parcels. The property, however, was not divided and the 1987 variance lapsed.

In 1994, the property was successfully divided into two lots (Lot 1 and Lot 2), but without a condition eliminating commercial activity. Lot 2 contained the existing house and barn and included a total of 1.2789 acres. Lot 2 fully conformed with applicable dimensional requirements, but Lot 1 (2.3298 acres) required a frontage variance, which was granted "with the condition that the entire Lot 1 be used for a single family dwelling." Although the board was aware that commercial activity was ongoing at the barn (on Lot 2) at the time, it imposed no condition that commercial activity terminate in order for the frontage variance to be granted as to Lot 1.

In 2000, the planning board of Danvers endorsed an "approval not required" (ANR) plan to redivide the property into Lots 1A and 2A, which was accomplished by shifting lot lines. The new Lot 1A is 1.1424 acres and, like the earlier Lot 1, lacks sufficient frontage on Juniper Ridge Road by approximately twenty-five feet. While Lot 1 was the larger lot under the 1994 plan, Lot 2A is larger under the 2000 plan, consisting of 2.4663 acres (an increase from Lot 2's 1.2789 acres). The existing house and barn are located on Lot 2A, which maintains the same frontage on Wenham Street as the former Lot 2, and fully conforms with the applicable frontage requirements of the zoning by-law.

Since the 1975 use variance was granted, the barn and the adjacent storage area have been rented out to various agricultural and horticultural businesses as a storage facility. In 2007, the Danvers building inspector issued a cease and desist order to Spear, ordering him to cease all commercial operations on the property. The board upheld the order, and Spear appealed the decision to the Land Court pursuant to G. L. c. 40A, § 17. The Land Court judge granted summary judgment in favor of the board, agreeing that the 1975 use variance is no longer in effect due to the subsequent divisions of the property. Spear now appeals.

*Discussion.* There does not appear to be, nor have the parties directed us to, a reported Massachusetts decision that has considered the issue presented by these facts. We are guided, however, by the principle that "[c]onditions [on a variance] must be sufficiently definite to apprise both the applicant and interested landowners of what can and cannot be done with the land." *Lussier* v. *Zoning Bd. of Appeals of Peabody*, 447 Mass. 531, 535 (2006), quoting from 8 Rohan, Zoning and Land Use Controls § 43.03[2] (2005). Thus, "[i]n order for conditions on a variance to be binding, they must be set forth in the variance decision itself." *Lussier* v. *Zoning Bd. of Appeals of Peabody, supra. Mendoza* v. *Licensing Bd. of Fall River*, 444 Mass. 188, 205 (2005) ("Purchasers of property or their attorneys are not expected or required to look behind the face of recorded variance decisions to ascertain their effective scope . . ."). With this principle in mind, and after a careful review of the record, we conclude that the 1975 variance remains in effect.

The 1975 variance decision contains four explicit conditions,

none of which has been violated. There is no mention in the variance decision of the size of the lot or a reference to the plan that established that the lot consisted of 3.9 acres. Nor does the decision impose any minimum lot size requirement or prohibition on future division. *Lussier, supra,* on which the Land Court judge relied, is thus distinguishable. In *Lussier,* the court rejected a landowner's contention that a variance authorizing new construction did not impose size or use limitations because the variance did not incorporate the plans submitted with the application for the variance. 447 Mass. at 535-536. The court noted that the variance nonetheless described the size and use of the improvements in narrative form, and concluded that "words specifying the size and use . . . are sufficient to constitute limitations on the variance." *Id.* at 536. Here, there was neither a plan referenced and attached to the variance nor words used in the variance itself that imposed or otherwise described any conditions on the required size of the lot.

The 1975 variance is not ambiguous and does not incorporate any other documents. Thus, we need not look beyond the face of the variance to determine its terms. See *Mendoza,* 444 Mass. at 205-206. The present board seeks to impose a condition — lot size — that is not stated in the variance. The 1975 board clearly understood how to impose conditions on the grant of a variance, as it inserted four detailed conditions in its decision. The present board's attempt to make the size of the property a condition is thus at odds with the contents of the 1975 variance decision itself.[2]

Our conclusion that the variance remains in effect is also supported by the actions of the board in the years following the grant of the 1975 variance. In 1987, the previous owners sought to divide the property and required a frontage variance to do so. The board granted the frontage variance with the express condition that "all commercial uses on the subject property shall terminate." The property was not divided in 1987, however, and the variance lapsed. In 1994, the owners again sought and received a frontage variance and did divide the property. Indeed,

---

[2]We also note that the subsequent divisions of the property did not intensify the nonconforming commercial use that has existed since the 1975 variance was granted and which is expressly limited to the barn and two and one-half times the floor area of the barn.

the 1994 division of the property was possible only with the affirmative relief provided by the frontage variance. The minutes of the 1994 board meeting reveal that the board was aware that the barn was still being used commercially. Yet, the board did not impose a condition similar to that in the 1987 variance decision requiring that commercial activity cease. Nor did the board question the ongoing viability of the 1975 variance in light of the division of the property. If, as the board now contends, preservation of the lot in the same configuration or size as it was at the time of the 1975 variance grant was an inherent or implicit condition of the 1975 variance, the board's action approving the 1994 variance stands in irreconcilable conflict with that contention.

Our decision today is not to be read as minimizing the importance of lot size with respect to permitted types of activity. But a condition restricting property size is not inherent in a variance authorizing a lot for a particular use. In order for such a significant condition to apply, it must be readily apparent either on the face of the variance or in a document incorporated in the variance by reference. See *Mendoza*, 444 Mass. at 205; *Lussier*, 447 Mass. at 535-536.

The judgment is reversed, and a new judgment shall be entered annulling the decision of the board of appeals as in excess of its authority.

*So ordered.*