# D.H.L. Associates, Inc. *vs.* Board of Selectmen of Tyngsborough & others.[1]

No. 04-P-699.

Middlesex. April 7, 2005. - August 15, 2005.

Present: Grasso, Brown, & Trainor, JJ.

*Constitutional Law,* Freedom of speech, Public entertainment. *Public Entertainment. License. Zoning,* Validity of by-law or ordinance. *Collateral Estoppel. Estoppel. Moot Question. Practice, Civil,* Moot case.

Where a Federal District Court had previously determined that the defendant town's adult entertainment zone did not violate the plaintiff's rights under the First Amendment to the United States Constitution, principles of issue preclusion barred the plaintiff's claim under art. 16 of the Massachusetts Declaration of Rights, as amended by art. 77 of the Amendments to the Massachusetts Constitution, where whatever differences might exist between the constitutional protections afforded to adult entertainment by art. 16 and the First Amendment, the constraints that the town's adult entertainment zone imposed on the plaintiff's license applications for live nude dancing were permissible under art. 16, given that the town had not completely prohibited a constitutionally protected form of expressive conduct, but instead had used its zoning power to confine such activities to a particular zoning district in order to advance substantial governmental interests [255-258]; moreover, the remainder of the plaintiff's State law claims were moot [258-259].

Civil actions commenced in the Superior Court Department on September 8, 1994, and February 18, 2000, respectively.

After consolidation, the cases were heard by *Elizabeth M. Fahey,* J., on motions for summary judgment.

*David A.F. Lewis* for the plaintiff.

*Jonathan M. Silverstein* for the defendants.

Grasso, J. For over a decade, D.H.L. Associates, Inc.

---

[1]John S. O'Gorman, Robert Wallace, Warren Allgrove, Jr., Eileen Farrell, and Donald Lampron, individually and in their capacity as the board of selectmen and licensing board of Tyngsborough; and the town of Tyngsborough.

(D.H.L.), and the board of selectmen of Tyngsborough, acting as the town's licensing board (collectively, the town), have disputed D.H.L.'s right to present live nude dancing at an establishment known as "Matthew's." Between 1994 and 2002, the town rejected D.H.L.'s applications for an adult entertainment license on nine separate occasions, each time because Matthew's was located outside of the town's adult entertainment zone. Notwithstanding these denials, D.H.L. was allowed to stage live nude dancing at Matthew's from February 10, 1994, until December 2, 2003,[2] as the town waited for Federal and State courts to adjudicate D.H.L.'s rights.

In an action removed from State court, the Federal District Court determined that the town's adult entertainment zone did not violate D.H.L.'s rights under the First Amendment to the United States Constitution, and ordered the case remanded to the Superior Court for determination of the remaining State law claims. *D.H.L. Assocs., Inc.* v. *O'Gorman*, 6 F. Supp. 2d 70 (D. Mass. 1998) (*D.H.L. I*). The United States Court of Appeals for the First Circuit affirmed the District Court's decision. *D.H.L. Assocs., Inc.* v. *O'Gorman*, 199 F.3d 50 (1st Cir. 1999), cert. denied, 529 U.S. 1110 (2000) (*D.H.L. II*). Thereafter, a Superior Court judge entered judgment for the town on D.H.L.'s remaining State constitutional and legal claims. On appeal, D.H.L. contends that the Superior Court judge erred in concluding that (1) principles of issue preclusion barred its claim under art. 16 of the Massachusetts Declaration of Rights, as amended by art. 77 of the Amendments to the Massachusetts Constitution; and (2) its other State law claims were moot. We affirm.

1. *Issue preclusion.* Since 1987, the town's zoning by-law has confined adult entertainment uses, including live nude dancing, to an area of the town zoned as the "B-4" zone. Although the size and location of the B-4 zone changed in 1994, and again in 1996, Matthew's has never been located within any version of the B-4 zoning district.

In the Federal proceedings, D.H.L.'s First Amendment challenges to the 1987, 1994, and 1996 versions of the B-4 zone

---

[2]The town, however, suspended D.H.L.'s liquor license for two days in March of 1994.

were considered and rejected. The Federal courts upheld the constitutionality of the 1996 B-4 zone and determined that parallel challenges to the 1987 and 1994 B-4 zones were moot. See *D.H.L. II*, 199 F.3d at 54-56, 58-60; *D.H.L. I*, 6 F. Supp. 2d at 75-79. On remand, a Superior Court judge considered the remaining State constitutional and legal claims, as well as a consolidated action that challenged, on essentially identical grounds, the denial of D.H.L.'s 1999 license application. The judge concluded that D.H.L. was precluded from challenging the various B-4 zones under art. 16, because there was "no distinction" between those State law claims and the First Amendment claims that were adjudicated in the Federal proceedings. On appeal, D.H.L. maintains that there is such a distinction, and argues that its art. 16 claims require consideration of issues that were never reached in Federal court.

We conclude that whatever differences might exist between the constitutional protections afforded to adult entertainment by art. 16 and the First Amendment, the constraints that the B-4 zone imposed on D.H.L.'s license applications for live nude dancing were permissible under art. 16. We recognize that art. 16 can provide greater protection for nude dancing than the First Amendment in other circumstances. See *Mendoza* v. *Licensing Bd. of Fall River*, 444 Mass. 188, 198-201 (2005) (art. 16 provides broader protection than First Amendment against indecency ordinance that bans all public nudity). However, that expanded protection is not available where, as here, the town did not completely prohibit a constitutionally protected form of expressive conduct, but instead used its zoning power to confine such activities to a particular zoning district in order to advance the substantial governmental interests of curbing crime, preserving property values, and minimizing dangers to public health. *Id.* at 198-199.

When a municipality employs its zoning power in this fashion, Massachusetts courts have traditionally utilized the Federal standard to assess the constitutionality of the challenged zoning ordinance under art. 16. See *T & D Video, Inc.* v. *Revere*, 423 Mass. 577, 580-582 (1996) (applying test set out by United States Supreme Court in *Renton* v. *Playtime Theatres, Inc.*, 475 U.S. 41 [1986]); *A.F.M., Ltd.* v. *Medford*, 428 Mass. 1020, 1021

(1999) (same). In such cases, "analysis under art. 16 is generally the same as under the First Amendment," because the rights of the citizens of Massachusetts are adequately protected by the Federal rule. *Mendoza* v. *Licensing Bd. of Fall River*, 444 Mass. at 201, citing *Opinion of the Justices*, 430 Mass. 1205, 1209 n.3 (2000). Compare *ibid.* (departing from First Amendment analysis of ordinance banning public nudity, because "the Federal rule does not adequately protect the rights of Massachusetts citizens under art. 16").

Accordingly, in these circumstances, art. 16 provides D.H.L. no greater protection from compliance with zoning requirements than does the First Amendment. Restricting live nude dancing to the B-4 zone is permissible under both the Federal Constitution and the Massachusetts Declaration of Rights because, as was established conclusively in the Federal litigation, (1) the town promulgated the adult entertainment zoning ordinance based on legitimate concerns about the secondary effects of adult entertainment, not to regulate the content of that form of expression; (2) the enactment was narrowly tailored to serve a substantial governmental interest; and (3) reasonable alternatives existed. See *D.H.L. II*, 199 F.3d at 57-61.

Despite D.H.L.'s strained assertions to the contrary, art. 16 does not obligate the town to justify its establishment of the B-4 adult entertainment zone with evidence of a substantial government interest that "appears in the municipality's legislative history." See *Cabaret Enterprises, Inc.* v. *Alcoholic Bevs. Control Commn.*, 393 Mass. 13, 17 (1984) (justification for restraining art. 16 right can appear in legislative history *or* judicial record). Like the First Amendment, art. 16 only requires the town to demonstrate that its stated concerns about the secondary effects of adult entertainment have some basis in fact and were actually a motivating factor in the decision to create the B-4 zone. See *T & D Video, Inc.* v. *Revere*, 423 Mass. at 581. These factual matters were conclusively determined against D.H.L. in the Federal aspects of this litigation. See *D.H.L. II*, 199 F.3d at 57-58 (discussing town's pre-enactment consideration of secondary effects).

In sum, the issues critical to D.H.L.'s art. 16 challenge to the

B-4 zoning district and to the permissible restriction of nude dancing to that district have already been resolved adversely to it in Federal court, and principles of issue preclusion prevent those issues from being relitigated here. See *Jarosz* v. *Palmer*, 436 Mass. 526, 530-531 (2002) (issue actually litigated and essential to final judgment is conclusive in subsequent action between parties); *Mancuso* v. *Kinchla*, 60 Mass. App. Ct. 558, 564 (2004) (Federal proceeding necessarily involved and decided core issue of fact essential to both Federal and State claims). See also *D.H.L. II*, 199 F.3d at 58-61 (1996 B-4 zone is content-neutral restriction narrowly tailored to serve substantial government interest and provides reasonable alternative avenues of communication). Accordingly, the Superior Court judge did not err in entering judgment for the town on D.H.L.'s art. 16 claims.

2. *Mootness.* The Superior Court judge correctly recognized that the remainder of D.H.L.'s State law claims were moot. There is no merit to D.H.L.'s contention that G. L. c. 40A, § 6, saves its challenges to the 1987 and 1994 B-4 zones from the mootness doctrine, because this statutory provision has prohibited "establishments which display live nudity" from receiving nonconforming use protection since 1996. See *Mendoza* v. *Licensing Bd. of Fall River*, 444 Mass. at 207-208 (as individual waivers of local legislation, nonconforming uses should be unusual). Even if the 1987 and 1994 B-4 zones were unconstitutional, nude dancing at Matthew's would have lost its prior nonconforming use status when the 1996 amendment to § 6 took effect. See *Telesetsky* v. *Wight*, 395 Mass. 868, 872 (1985) (statutory language "must be afforded its plain meaning when it is clear and unambiguous"). Because Matthew's can no longer be "grandfathered" for purposes of zoning, the constitutionality of the 1987 and 1994 B-4 zones became moot issues with the enactment of the current B-4 zone.

We are equally unpersuaded by D.H.L.'s argument that its licensing claims present an actual controversy. Even if the town's denial of adult entertainment licenses to D.H.L. in prior years were somehow improper, D.H.L.'s claims still would not

present a live issue.[3] Adult entertainment licenses expire by their own terms at the end of each year. See G. L. c. 140, § 183A, as amended by St. 1981, c. 694, § 1 ("A license issued under this section . . . shall expire on December thirty-first of each year"). Each license denial affected D.H.L.'s rights for one calendar year only, and any entitlement to an adult entertainment license that D.H.L. may have enjoyed in years past cannot translate into a current entitlement to receive such a license.[4] See *Highland Tap of Boston, Inc.* v. *Commissioner of Consumer Affairs & Lic.*, 33 Mass. App. Ct. 559, 566 (1992) (questions concerning issuance of one-year entertainment licenses for previous years rendered moot by passage of time).

*Judgments affirmed.*

---

[3]We observe that D.H.L. was allowed to operate as if it held an adult entertainment license in every year that the town denied its license applications.

[4]Nor are we persuaded otherwise by a stipulation entered prior to the Federal District Court trial wherein the town conceded that if D.H.L. had been granted an adult entertainment license, the town would have automatically renewed the license in subsequent years so long as D.H.L. remained in compliance with applicable laws and regulations. By the very terms of the stipulation, renewal is conditioned on D.H.L.'s ongoing compliance with applicable laws and regulations, including the town's zoning by-laws.