NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

SJC-11770

SHOWTIME ENTERTAINMENT, LLC  vs.  TOWN OF MENDON & others.[1]


Suffolk.     March 5, 2015. - July 8, 2015.

Present:  Gants, C.J., Spina, Cordy, Botsford, Duffly, Lenk, &
Hines, JJ.


Alcoholic Liquors, Entertainment.  Constitutional Law, Alcoholic
     beverages, Public entertainment, Freedom of speech and
     press.  Municipal Corporations, By-laws and ordinances.
     Zoning, Validity of by-law or ordinance.


     Certification of questions of law to the Supreme Judicial
Court by the United States Court of Appeals for the First
Circuit.


     Thomas Lesser (Michael Aleo with him) for the plaintiff.
     Robert S. Mangiaratti (Brandon H. Moss with him) for the
defendants.


     SPINA, J.  We consider in the present case a challenge

brought against a bylaw adopted by the town of Mendon (town)

prohibiting the sale or presence of alcohol at adult

entertainment establishments.  Showtime Entertainment, LLC

_____

     [1] Mike Ammendolia and Lawney Tinio.

(Showtime), seeks to operate such an establishment within the town and to serve alcohol on the premises. It brought suit in Federal court seeking to invalidate the bylaw. The United States Court of Appeals for the First Circuit has certified the following questions to this court, pursuant to S.J.C. Rule 1:03, as appearing in 382 Mass. 700 (1981)[2]:

> "1. Do the pre-enactment studies and other evidence considered by [the town] demonstrate a 'countervailing State interest,' Cabaret Enters., Inc. v. Alcoholic Beverages Control Comm'n, 393 Mass. 13, 17 . . . (1984) sufficient to justify [the town's] ban on alcohol service at adult-entertainment businesses?
>
> "2. If the ban is so justified, is it adequately tailored?"

See Showtime Entertainment, LLC v. Mendon, 769 F.3d 61, 82-83 (2014) (Showtime).

The certified questions presented to us by the Court of Appeals focus on two parts of the test employed to determine the constitutionality of "content-neutral" restrictions on expressive behavior as first outlined in United States v. O'Brien, 391 U.S. 367, 377 (1968). See Commonwealth v. Ora, 451 Mass. 125, 129 (2008). The four factors of the test are: (1)

---

[2] Supreme Judicial Court Rule 1:03, as appearing in 382 Mass. 700 (1981), provides: "This court may answer questions of law certified to it by . . . a Court of Appeals of the United States . . . when requested by the certifying court if there are involved in any proceeding before it questions of law of this State which may be determinative of the cause then pending in the certifying court and as to which it appears to the certifying court there is no controlling precedent in the decisions of this court."

the regulation must be within the power of the government to enact; (2) the regulation must further an important or substantial governmental interest; (3) the government interest must be unrelated to the suppression of free expression; and (4) the restriction must be no greater than is essential to the furtherance of the government interest.  O'Brien, supra.  We answer the first question in the affirmative.  We answer the second question in the negative.

1.  Background and procedure.  We summarize certain undisputed facts set forth by the First Circuit, see Showtime, 769 F.3d at 66-69, and in the record before us.  In May, 2008, at its annual town meeting, the town created an adult entertainment overlay district pursuant to G. L. c. 40A, § 9, within which an adult entertainment business is allowed to operate.  After the creation of this district on June 10, 2005, Showtime applied for a license to operate an adult entertainment business featuring live nude dancing.  A hearing on Showtime's application was scheduled for September 15, 2008.

In the meantime, a group of residents citing traffic concerns petitioned the board of selectmen to enact and amend bylaws further regulating adult entertainment businesses in the town.  These proposed bylaws sought to regulate the physical structure of a business, to control the operating hours, to forbid the presence or sale of alcohol on the premises of any

adult entertainment business, and to forbid any adult

entertainment at an establishment currently licensed to serve

alcohol.  The citizen group, Speak Out Mendon, gave a

presentation to a special town meeting on October 7, 2008,

called to consider the proposed bylaws.  In the presentation,

the group highlighted two studies that concluded that the

presence of alcohol in physical proximity to sex-oriented

businesses increase the incidence of crime.[3]  Showtime's

application was denied on October 1, 2008.

The town enacted and amended the bylaws as proposed by the

citizen group.  The text of the bylaw restricting the service of

---

[3] The group cited two studies that specifically referenced crime and adult entertainment businesses in its presentation. The first was a 1991 study that analyzed the effect on adult businesses, an undefined term, on crime rates over a period of ten years in the city of Garden Grove, California.  See McCleary & Meeker, Final Report to the City of Garden Grove:  The Relationship Between Crime and Adult Business Operations on Garden Grove Boulevard, October 23, 1991.  The other study analyzed the effects of sexually oriented businesses in Los Angeles, California.  McCleary, Crime-Related Secondary Effects of Sexually Oriented Businesses:  Report to the City Attorney, May 6, 2007.  The presentation also referenced another study that included crime as a secondary effect of sexually oriented businesses, but the presentation did not cite the study for this point.  Hecht, Report to the American Center for Law and Justice on the Secondary Impacts of Sex  Oriented Businesses, ERG/Environmental Research Group, March 31, 1996.  Only the 1991 Garden Grove report explicitly concluded that the presence of alcohol in physical proximity to adult businesses heightened crime rates.

alcohol is set forth in the margin.[4]  The Attorney General issued an opinion approving the new bylaws but noted their

_____

[4] "CHAPTER XXV[:]  ADULT ENTERTAINMENT ESTABLISHMENTS AND LIQUOR LICENSES

"The following provisions apply to all Adult Entertainment or Use establishments consisting of an 'adult bookstore', 'adult motion picture theater', 'adult paraphernalia store', 'adult video store', and an 'establishment which displays live nudity for its patrons' as defined by [G. L. c. 40A, § 9A,] located within the layout lines of the Adult Entertainment Overlay District created by the voters of the Town of Mendon on May 2nd, 2008 as set forth in the Mendon Zoning Bylaws:

"1.  The Town of Mendon shall not grant any license for the sale of alcohol for consumption in accordance with the provisions of [G. L. c. 138, § 12,] to any Adult Entertainment or Use establishment, as defined by [G. L. c. 40A, § 9A,] as the presence of alcohol is documented to exacerbate negative secondary crime effects at sexually-oriented businesses.

"2.  The Town of Mendon shall not grant any special licenses for the sale of alcohol for consumption in accordance with [G. L. c. 138, § 14,] to any establishment as defined as an Adult Entertainment or Use per [G. L. c. 40A, § 9A,] as the presence of alcohol is documented to exacerbate negative secondary crime effects at sexually-oriented businesses.

"3.  The Town of Mendon shall not allow patrons of Adult Entertainment or Use establishments to consume alcoholic beverages within any Adult Entertainment or Use establishment, even if such beverages are brought to the premises by the patrons as a presence of alcohol is documented to exacerbate negative secondary crime effects at sexually-oriented businesses.

"4.  In the event that an establishment already in possession of a license in accordance with [G. L. c. 138, § 12 or 14,] applies for a license to operate an Adult Entertainment or Use, such establishment shall only be granted a license to coincide with the expiration of its

susceptibility to a constitutional challenge.  Showtime submitted a new application to operate an adult entertainment business that addressed the new bylaws.

The town approved the application on May 3, 2010.  Showtime then filed suit in Federal District Court seeking a declaratory judgment that the restrictions placed on the license are unconstitutional limitations on expressive activity that is constitutionally protected.  On cross motions for summary judgment, the Federal District Court judge found in favor of the town.  Showtime appealed to the United States Court of Appeals for the First Circuit.  The Court of Appeals determined that the limitations on the physical plant and operating hours were unconstitutional but that the outcome of the challenge to the bylaw regulating the sale of alcohol centered on unresolved questions of Massachusetts constitutional law better suited for determination by this court.  See Showtime, 769 F.3d. at 74-75, 78-83.  We now consider the questions presented.

2.  Level of scrutiny.  We need not engage in an extended discussion of the parties' first point of disagreement regarding the appropriate level of scrutiny.  We accept the approach taken by the Court of Appeals.  In answering the questions presented we analyze the restrictions using intermediate scrutiny as if

_____

[G. L. c. 138, § 12 or 14,] license(s) and this license will not be renewed."

the bylaws are content neutral.  See Showtime, 769 F.3d at 71.
As we will explain, we conclude that the bylaws do not survive
intermediate scrutiny.

3.  Countervailing State interest.  In California v. LaRue,
409 U.S. 109, 118-119 (1972), the United States Supreme Court
held that the right to freedom of expression at the heart of the
First Amendment to the United States Constitution did not extend
to protect the existence of nude dancing in an establishment
licensed by the State to serve alcohol.  At issue were
regulations prohibiting the service of liquor in an
establishment that featured nude dancing.  Id. at 111-112.  In
considering the question of the State's power to revoke the
license, the Court started from the premise that the First
Amendment protected expression and that nude dancing may be
considered a form of expression.  Id. at 116-117.  The Court's
analysis then considered the effect of the Twenty-first
Amendment to the United States Constitution on the right to
freedom of expression.  Id. at 118-119.  The Twenty-first
Amendment returned to the States the ability to regulate
alcohol.  Id. at 114.  This absolute grant of power meant that
at times the First Amendment right to freedom of expression in
the form of conduct could come into conflict with the State's
power to regulate alcohol.  Id. at 118.  The Court reasoned that
as this conduct moved toward the "commission of public acts that

may themselves violate valid penal statutes, the scope of permissible [S]tate regulations significantly increases." Id. at 117. As the State was not restricting the conduct across the board but rather only in locations licensed to serve alcohol by the glass and the Twenty-first Amendment expressly gave the States the power to regulate the supply of alcohol, the State could ban nude dancing in a licensed establishment because the Amendment gave an added presumption in favor of the validity of State regulation in this area. Id. at 118-119.

The Supreme Court would later disavow the reasoning in LaRue. In 44 Liquormart, Inc. v. Rhode Island, 517 U.S. 484, 515-516 (1996), the Court reconsidered the interplay of the First and Twenty-first Amendments. It concluded that the State clearly had the inherent police power to control "bacchanalian revelries" and it was thus unnecessary to seek the source of this power in the existence of the Twenty-first Amendment. Id.

Our jurisprudence regarding nude dancing and licensed establishments developed in the interval between LaRue and 44 Liquormart, Inc. In Commonwealth v. Sees, 374 Mass. 532, 537 (1978), we acknowledged that a city ordinance prohibiting nude dancing in an establishment licensed to sell alcoholic beverages would not run afoul of the First Amendment following LaRue. Yet we did not reach the same conclusion when asked if the free speech provision of art. 16 of the Massachusetts Declaration of

Rights allowed the same prohibition. Id. Instead, we differed from the Supreme Court in LaRue because "no provision of our Constitution gives a preferred position to regulation of alcoholic beverages." Id. Accordingly, we said that "the artistic preferences and prurient interests of the vulgar are entitled to no less protection than those of the exquisite and sensitive esthete." Id.

Our cases following Sees continued to recognize that "the Federal rule does not adequately protect the rights of the citizens of Massachusetts under art. 16," Mendoza v. Licensing Bd. of Fall River, 444 Mass. 188, 201 (2005), despite the fact that "analysis under art. 16 is generally the same as under the First Amendment." Id. Our statements were not intended to undermine attempts of communities to regulate the "explosive combination" of nude dancing and liquor. Blue Canary Corp. v. Milwaukee, 251 F.3d 1121, 1124 (7th Cir. 2001). Rather, we recognized that the regulation of alcohol at adult entertainment establishments was inevitably intertwined with the right to free speech. Cabaret Enters., Inc. v. Alcoholic Beverages Control Comm'n, 393 Mass. 13, 17-18 (1984). We likened the analysis to restrictions on speech regulating "time, place, and manner." Mendoza, supra at 197-198. We stated that those communities wishing to restrict adult entertainment establishments would be required to show some "demonstrated countervailing State

interest" to justify the otherwise impermissible restriction. Cabaret Enters., Inc., supra at 17.

The countervailing State interest cannot concern the content of the speech at issue, as that would impermissibly transform the restriction from content neutral to content based. Renton v. Playtime Theatres, Inc., 475 U.S. 41, 47 (1986). Instead, the municipality can attempt to address the "secondary effects" of adult establishments in crafting regulations. Id. at 47-48. The appropriate secondary effects to be considered make an exhaustive -- but not surprising -- list. Id. at 48 (crime prevention, protection of retail trade, maintenance of property values, protection and preservation of community life); D.H.L. Assocs., Inc. v. O'Gorman, 199 F.3d 50, 57-58 (1st Cir. 1999) (controlling number of police calls); Mendoza, 444 Mass. at 198-199 ("curbing crime, including prostitution and rape, preserving property values, and minimizing danger to public health"); Cabaret Enters., Inc., 393 Mass. at 17 (crime prevention); D.H.L. Assocs., Inc. v. Selectmen of Tyngsborough, 64 Mass. App. Ct. 254, 257 (2005).

The demonstration of this countervailing State interest in the form of the mitigation of negative secondary effects need only be shown by evidence in the judicial record or legislative history sufficient to conclude that the restraint on speech is

required for the protection of the public.[5]  Cabaret Enters.,
Inc., 393 Mass. at 17.  The municipality cannot rationalize the
restriction post hoc but must show the evidence it actually
considered in enacting the restriction.  T & D Video, Inc. v.
Revere, 423 Mass. 577, 581 (1996).  Neither is it necessary that
the municipality demonstrate these secondary effects by evidence
specifically studying its own unique circumstances.  Renton, 475
U.S. at 51-52 (municipality need not "conduct new studies or
produce evidence independent of that already generated by other
cities, so long as whatever evidence the city relies upon is
reasonably believed to be relevant to the problem that the city
addresses").

The town argues that it had sufficient evidence to believe
that the presence of adult entertainment and alcohol at the same
location would lead to increased crime, a secondary effect that
the town could have a substantial interest in curtailing.  It
points to studies mentioned or outlined in a presentation by
Speak Out Mendon to the special town meeting that passed the
bylaw.  We agree with the town that the findings of the studies

---

[5] In determining that the municipality has sufficient
evidence to demonstrate the countervailing State interest, we
characterize the evidentiary bar a public entity must pass when
restricting expression.  Clearly, the State interest need not be
perfectly demonstrated, but the evidence before the municipality
must lead to the reasonable conclusion that a countervailing
State interest exists in fact.  This requirement ensures that
the identified interest is not a spurious one.

offer evidence sufficient to conclude that increased crime is a secondary effect when adult entertainment and alcohol service are in physical proximity. Showtime attempts to undermine this determination by arguing that, although crime prevention is indeed a significant countervailing State interest, the evidence before the town meeting did not support the conclusion that alcohol at adult entertainment establishments increases crime or that banning alcohol at such establishments would decrease the rate of crime.[6]

Showtime offers no affirmative evidence to counter the town's determination that a countervailing State interest exists. Its criticisms of the data relied on by Mendon are the product of an article that highlights statistical inaccuracies in specific studies relied on by other municipalities to demonstrate a countervailing State interest. See Bryant Paul, Government Regulation of "Adult" Businesses Through Zoning and Anti-Nudity Ordinances: Debunking the Legal Myth of Negative Secondary Effects, 6 Comm. L. & Pol'y 355, 389 (2001). None of

---

[6] Showtime also attempts to make the distinction between service of alcohol "at" an adult entertainment establishment, as regulated by the alcohol restriction, and the service of alcohol in physical proximity to the establishment, as it claims the Garden Grove study examined. This argument has no merit. The Garden Grove report concluded that the service of alcohol within a radius of 1,000 feet of an adult business had a statistically significant effect on crime rates. Contrary to Showtime's argument, this necessarily includes the center of the circle determined by the radius.

the studies at issue in that article was utilized by the town in the instant case. Therefore, we are satisfied that evidence exists within the cited studies sufficient to support the conclusion that the town has reached in this instance. Accordingly, we answer the first certified question in the affirmative. The town utilized evidence sufficient to demonstrate a countervailing State interest.

4. Narrowly tailored. Having concluded that the town has sufficient evidence to believe that alcohol and adult entertainment businesses lead to an increase in crime and that crime prevention is a substantial government interest, we turn to the question whether the bylaw is "adequately tailored." "The 'essence of narrowly tailoring' is that 'the guideline . . . focuses on the source of the evils the [town] seeks to eliminate . . . and eliminates them without at the same time banning or significantly restricting a substantial quantity of speech that does not create the same evils.'" Boston v. Back Bay Cultural Ass'n, Inc., 418 Mass. 175, 182 (1994), quoting Ward v. Rock Against Racism, 491 U.S. 781, 799 n.7 (1989). "So long as the means chosen are not substantially broader than necessary to achieve the government's interest, however, the regulation will not be invalid simply because a court concludes that the government's interest could be adequately served by some less-speech-restrictive alternative." Ward, supra at 800.

Put simply, we first examine if the restriction is overbroad. If it is not overbroad, then the restriction is not unconstitutional even if a less restrictive alternative remains available. To determine if the restriction is overbroad, we look not to the effect of the restriction on the speech at issue but rather to the effect on any other speech encompassed by the restriction and ask if the sweep is "substantially broader than necessary" to achieve the town's goal of crime prevention. Id.

The town argues that the complete ban of alcohol on the premises of establishments identified and defined in G. L. c. 40A, § 9A, is not substantially broader than necessary to prevent crime because adult entertainment and the service of alcohol remain available to the public but simply not in the same place. We have previously rejected this rationale in Cabaret Enters., Inc., 393 Mass. at 17-18. In that case, we declined to view a statute revoking a liquor license at an establishment featuring nude dancing as one only regulating liquor sales. Id. at 18. Instead we stated that the statute prohibited nude dancing at establishments that served alcohol, and thus was an impermissible restriction on speech. Id.

The alcohol restriction here acts in the same manner as the statute in Cabaret Enters., Inc., and therefore cannot stand because it is substantially broader than necessary. The bylaw on its face bans the service of alcohol at any establishment

that displays live nudity to its patrons and that is located within the adult entertainment overlay district. We consider a hypothetical establishment licensed to serve alcohol, such as a theater, theoretically located in the adult entertainment overlay district, that wishes to show "the rock musical 'Hair,' the play 'Equus,' and Richard Strauss's opera 'Salome' and Oscar Wilde's play of the same name." Mendoza, 444 Mass. at 200. These mainstream performances feature live nudity and thus fall under the alcohol restriction. Yet this hypothetical theater cannnot be said to be an adult -- or sexually oriented -- business identified as the source of negative secondary effects in the studies utilized by the town. Accordingly, the sweep of that ban encompasses "work[s] of unquestionable artistic and socially redeeming significance" that might be displayed at an establishment serving alcohol in the overlay district but have not been shown to cause the disorderly conduct the town seeks to prevent. Mendoza, supra, quoting Sees, 374 Mass. at 537.

The town protests that the alcohol restriction cannot be read in this manner. We are not so confident. The bylaw would forbid the issuance of a permit for any of the above performances in the spirit of crime prevention. Banning all manner of expression at establishments licensed to serve alcohol on the basis that the expression features nude dancing is not the logical response to the determination that alcohol service

in physical proximity to adult businesses increases the incidence of crime.  Accordingly, such a ban would clearly violate art. 16 no matter the interest in crime prevention.  See Sees, 374 Mass. at 537.  The town must seek other, narrower means to pursue its goal of crime prevention.[7]  Accordingly, we answer the second certified question in the negative.

5.  Conclusion.  For the reasons stated, we answer the first reported question in the affirmative and the second in the negative.  The Reporter of Decisions is directed to furnish attested copies of this opinion to the clerk of this court.  The clerk in turn will transmit one copy, under the seal of this court, to the clerk of the United States Court of Appeals for the First Circuit, as the answers to the questions certified, and will also transmit a copy to each party.

So ordered.

---

[7] Showtime does not contest the town's right to further its interest in crime prevention through security and other regulations.  We particularly note that efforts to completely ban the service or provision of alcohol pose a different question from attempts to regulate its consumption.